UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not present | Not present |

**Proceedings:**   (In Chambers:) PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER (filed September 25, 2012)

## I.   INTRODUCTION

On September 13, 2012, plaintiffs Courtney Carlsson, et al., filed the instant complaint for declaratory and injunctive relief against defendants United States Citizenship and Immigration Services ("USCIS"), Janet Napolitano, Secretary of the U.S. Department of Homeland Security, Alejandro Mayorkas, Director of USCIS, and Rosemary Melville, Director of USCIS California Service Center.  Dkt. No. 1.  Plaintiffs are a group of immigrant investors who were denied conditional residency in the United States after the USCIS denied or revoked their I-526 investor petitions.

Plaintiffs allege that defendants: (1) improperly and retroactively applied immigration rules and standards to them; (2) acted arbitrarily and capriciously in violation of the Immigration and Nationalization Act ("INA") and the Administrative Procedures Act ("APA"); (3) exceeded their statutory authority under the INA; and (4) denied plaintiffs' rights to due process under the Fifth Amendment to the U.S. Constitution.  Id.  Accordingly, plaintiffs request relief including the following: that this Court declare defendants' denials or revocations of plaintiffs' I-526 petitions to be unlawful and direct defendants to issue the petitions forthwith; that it order defendants' to provide documentation for plaintiffs' "aged-out" children; order defendants' not to consider plaintiffs' presence in the United States as unlawful at any time during the pendency of this litigation; and various other forms of injunctive relief, enjoining defendants from deporting these plaintiffs and their dependents or depriving these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

plaintiffs of the right to travel, and enjoining defendants from refusing to approve similar investment projects in the future.  Id.

On September 25, 2012, plaintiffs filed an ex parte application for a temporary restraining order ("TRO") and an order to show cause why defendants should not be preliminarily enjoined.  Dkt. No. 6.  Plaintiffs ask this Court to temporarily restrain defendants from: (1) treating as unprotected under the Child Status Protection Act, 8 U.S.C. § 1153(h)(1), any of plaintiffs' children who were under the age of 21 at the time their parents' I-526 petition was filed, but now exceed this age; (2) refusing to grant "motions to reopen" regarding the I-485 applications of plaintiffs Courtney Carlsson and DeQing Kong and refusing to grant permission for these plaintiffs to travel and retain their work authorization; (3) refusing to renew plaintiff Gerardus Van Der Ham's eldest son's B-2 visa.  Id.  USCIS, on behalf of itself and the other defendants, filed its opposition on September 27, 2012.[1]  Plaintiffs filed a reply on the same date.  After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Immigrant Investor Pilot Program

Under provisions of the Immigration and Nationality Act of 1990, codified at 8 U.S.C. § 1153(b)(5), certain investor immigrants are eligible to obtain "EB-5 visas" and eventually, lawful permanent resident ("LPR") status, according to a new preference allocation.  See Chang v. United States, 327 F.3d 911, 916 (9th Cir. 2003).  Immigrants are eligible who (1) have invested or are in the process of investing a specified amount of capital in commercial enterprises, and (2) can demonstrate that the investment will create or save ten or more jobs for United States workers.  In "targeted employment areas," like the one at issue in this case, a minimum investment of $500,000 is required.  8 U.S.C. § 1153(b)(5)(B)(ii), (b)(C)(ii); 8 C.F.R. § 204.6(f)(2).

---

[1] The Court GRANTS defendants' ex parte request to exceed the page limit set forth in Local Rule 11-6 for good cause shown.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

    Under an amended version of the law establishing the EB-5 program, immigrant investors are permitted to pool their capital in "regional centers," or "any economic unit, public or private, which is involved in the promotion of economic growth, including. . . improved regional productivity, job creation, and increased domestic capital investment." 8 C.F.R. § 204.6(e); see also § 204.6(m) (discussing the establishment and requirements of the "Immigrant Investor Pilot Program" pursuant to section 610 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriation Act of 1993, Pub. L. 102-395, 106 Stat. 1828, 1874). Only regional centers that have been approved by USCIS are eligible to participate in the program. Id. § 204.6(m)(4).[2] The requirement that each participant investor directly create ten or more jobs is relaxed under 8 C.F.R. § 204.6(m)(7)(ii), which specifically allows an immigrant investor to prove they have "indirectly" created jobs through any "reasonable methodologies."

    Special requirements apply to investors in the Immigrant Investor Pilot Program as compared to other immigrant investors. First, the regional center must be approved by USCIS, which requires the applicant to demonstrate, through "economically or statistically valid forecasting tools," how its proposed activities will positively impact the region's development. 8 C.F.R. § 204.6(m)(3)(v). The requirements are admittedly vague, focused primarily on a demonstration of how the center "will promote economic growth through increased export sales, improved regional productivity, job creation, and increased domestic capital investment." Id. § 204.6(m)(3)(i). USCIS expressly reserves the right to terminate the approval of regional centers that "no longer serve[] the purpose of promoting economic growth." Id. § 204.6(m)(6). Such termination would also likely lead to the termination of the individual investor's petitions.

    Second, to participate in the EB-5 program, prospective immigrant investors must file I-526 petitions based upon their investment and business plans, which upon approval, grant immigrant investors the right to enter the country as conditional LPRs. Chang, 327 F.3d at 916; 8 C.F.R. § 204.6(a). Under the Pilot Program, the petition must contain evidence that the alien has invested or "is actively in the process of investing" the required amount of capital within an approved regional center, and that this capital has

---

    [2] Although the statutes and regulations often refer to "alien entrepreneurs," the Court will also use the term "immigrant investors" interchangeably.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

been placed "at risk" by the investment. 8 C.F.R. § 204.6(j)(4)(2), (3). As to the job creation requirement, the "petition must be accompanied by evidence that the investment will create full-time positions for not fewer than 10 persons either directly or indirectly." Id. § 204.6(j)(4)(iii); see also id. § 204.6(m)(7) (petitioner must demonstrate that the investment "will create jobs indirectly through revenues generated from increased exports resulting from the new commercial enterprise").

If the USCIS approves the petition, the alien entrepreneur and their spouse and children, if under the age of 21 at the time the I-526 petition was filed, are eligible for conditional LPR status. 8 U.S.C. § 1186b(a)(1); see id. § 1153(h)(1). To obtain such status, the immigrant must file a Form I-485 "application for adjustment of status," which upon approval, grants the immigrant conditional LPR status. See 8 U.S.C. § 1255(a), (b); 8 C.F.R. § 245.2.

As with other approvals, USCIS may not revoke the I-526 approval except for "good and sufficient cause," after providing notice to the petitioner. Id. § 1155; 8 C.F.R. § 205.2(c). An appeal of USCIS's decision may be filed with the Administrative Appeals Office. 8 C.F.R. § 205.2(d). In addition, § 1186b(b)(1) requires the Attorney General to terminate, at any point, the permanent resident status of any alien who is not otherwise in conformance with the requirements of § 1153(b)(5). Such termination may be reviewed in a deportation proceeding if one is commenced, where the burden of proof is on USCIS to prove that the required conditions remain unfulfilled. Id. § 1186b(b)(2). No other administrative exhaustion requirements apply, as there is there is no statutorily mandated appeal from denials of I-526 petitions. See Chang, 327 F.3d at 922 (noting that because § 1186b does not foreclose judicial review, "a district court's subject matter jurisdiction is unaffected by the availability of non-mandatory administrative procedures").

Thereafter, the alien entrepreneur must file USCIS Form I-829, a Petition by Entrepreneur to Remove Conditions, which removes the "conditional" tag on an entrepreneur's lawful permanent resident status. 8 U.S.C. § 1186b(c); 8 C.F.R. § 216.6(a). The petition must demonstrate that the alien: (1) "invested, or is actively in the process of investing" the required amount of capital; (2) "sustained" the investment throughout the conditional period; and (3) is otherwise "conforming to the requirements" set forth in § 1154(b)(5), including that of job creation. Id. § 1186b(d)(1); 8 C.F.R. § 216.6(a)(4). If the petition is approved, the investor becomes a lawful permanent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

resident. If the petition is denied, the alien's status as an LPR is terminated as of the date of the determination. In that case, an alien "may request a review" of the determination in a removal proceeding, if one is instituted against the alien. Id. § 1186b(c)(3)(D).

   B.   **Plaintiffs' Allegations**

On June 23, 2009, USCIS granted approval of a regional center operated by American Life Development Company LLC ("ALDC") for certain areas in Riverside County. Compl. ¶ 17, Ex. A. On October 12, 2010, USCIS approved an amended designation for ALDC, which expanded the number of target "industries" and expanded its geographic scope. Id. ¶ 18.[3]

On January 7, 2011, 14575 Innovation Drive Limited Partnership ("Innovation LP") was established for the purpose of acquiring a 17.58 acre parcel of real property in Riverside, California. Id. ¶ 19. Innovation LP originally sought to obtain $500,000 from 24 investors, but was only able to secure investments from 23 individuals, all of whom are the plaintiffs in this litigation. Id. Before plaintiffs' petitions were denied or revoked, Innovation LP had spent over seven million dollars in purchasing the property. In late 2011, USCIS approved eight of the I-526 petitions at issue in this action. Thereafter, a number of the plaintiffs were planning to pursue or were already pursuing the second stage of the visa process, the I-485 application for adjustment of status to a conditional LPR. Dkt. No. 6 at 7. Plaintiffs Courtney Carlsson and DeQing Kong had already obtained temporary work authorization pursuant to their pending I-485 applications. Id., Exs. A, B.

In April 2012, however, USCIS decided to change course, issuing notices of intent to revoke ("NOIR") the approved I-526 petitions and requests for evidence ("RFE")

---

   [3] This amended designation stated that any I-526 that is submitted based on investment in ALDC "need not show that the new commercial enterprise created ten new jobs indirectly," because USCIS' acceptance of the center's proposal established that this criterion had been met. Id. Ex. B. Instead, "the investor must show at the time of the removal of conditions [i.e., in the I-829 petition] that they performed the activities described in the model and on which the approved methodology is based." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

related to the petitions for which a decision was pending. Compl. ¶ 19. USCIS determined that: (1) there was insufficient evidence that EB-5 investor capital had been placed at risk; (2) the petitioner's comprehensive business plan failed to provide sufficient detail to support a finding that the job-creation requirements would be met; and (3) the market analysis petitioners submitted was not a "reasonable methodology" for estimating job creation. Id. Ex. C. Therefore, USCIS concluded there was "good and sufficient cause" for the issuing the NOIR or RFE. Id.

Plaintiffs contend that these NOIRs and RFEs are premised on "numerous factual errors" and a challenge to the underlying methodology of the regional center that already had been approved by USCIS on numerous occasions—including in the approval of ALDC itself. Id. ¶ 22. After receiving the NOIRs and RFEs, plaintiffs made various objections through identical written responses. Id. ¶ 23, Ex. E.

First, plaintiffs argued that investor capital had indeed been placed at risk, and was used and would be used by Innovation LP for the purchase and renovation of the warehouse property and an additional, adjacent property yet to be purchased. Id. Ex. E.

Second, plaintiffs contended that their market analysis was sound and sufficiently detailed; in addition, they submitted the "Concord Report" as further evidence. Third, based upon both the Sommers Report (submitted with their initial petition) and the Concord Report, plaintiffs argued that the job creation analysis was based on reasonable methodologies, and taken together demonstrated that plaintiffs' investment would lead to the requisite job creation for an I-526 petition to be approved. Id.

Fourth, plaintiffs accused USCIS of impermissibly adopting new adjudication standards midstream, as evidenced by the "Tenant Occupancy" announcement of February 17, 2012. See id. Ex. E. Under these alleged heightened standards, plaintiffs argue, USCIS essentially revisited its approval of the indirect job creation analysis submitted for the ALDC, now finding the methodology to be insufficient. Furthermore, plaintiffs contended that USCIS's decision ran afoul of the "Operational Guidance" that USCIS issued on May 8, 2012, which stated that if a regional center was approved based on a specific project, USCIS would "not revisit [a] determination that the economic model and underlying business plan were reasonable when adjudicating related Form I-526 petitions." See id. Ex. F (noting that such deference is appropriate unless "the facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

underlying the prior decision have materially changed, there is evidence of fraud. . ., or the previously favorable decision is determined to be legally deficient").

Fifth, plaintiffs argued that USCIS had not demonstrated good and sufficient cause for the NOIRs, because USCIS failed to demonstrate any clear factual errors in its prior determination, but instead was attempting to re-adjudicate the petitioner's applications against a more rigorous standard for approval. Id. Ex. E.

Defendants responded to all plaintiffs' response in identical fashion through a Notice of Revocation of Immigrant Petition or a Notice of Decision. See, e.g. id. Exs. G, I. USCIS found that: (1) there were no assurances that all the required capital would be placed at risk; (2) there were a number of discrepancies in the record regarding plaintiffs' proposed comprehensive business plan; and (3) the economic analyses were not based on reasonable methodologies for predicting job creation. Id. ¶ 28–30. In addition, USCIS concluded that deference was not appropriate in this case, because USCIS was not challenging the underlying tenant occupancy methodology as invalid, but instead that "the methodologies contained in the petitioner's submitted economic impact analyses present a number of discrepancies and/or appear to be inapplicable to the project described in the instant petition." Id. Ex. G. Therefore, USCIS found that the petitions should be revoked or denied, respectively, for "good and sufficient cause." Id. Ex. G.

**III.   LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984). Under either formulation, demonstrating a likelihood of success on the merits and irreparable harm is "most critical." Nken v. Holder, 556 U.S. 418, 434 (2009).

IV.   **ANALYSIS**

　　A.   **Fair Chance or Likelihood of Success on the Merits**

　　　　1.   **Impermissible Retroactivity**

Plaintiffs first claim is that defendants' actions here were impermissibly retroactive under the Montgomery Ward v. FTC standard, 691 F.2d 1322, 1333 (9th Cir. 1982). Montgomery Ward adopted a five factor test for determining whether agency action is impermissibly retroactive:

> Among the considerations that enter into a resolution of the problem are (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

Id. "This test balances a regulated party's interest in being able to rely on the terms of a rule as it is written against an agency's interest in retroactive application of an adjudicatory decision." Chang, 327 F.3d at 928.

Plaintiffs argue that defendants: (1) impermissibly imported the approval standards for I-829 petitions into the I-526 approval stage; and (2) improperly revisited their prior approval of the regional center at issue. Dkt. No. 6 at 13.

The Court finds that plaintiffs have not made the requisite showing of a likelihood of success on their retroactivity claim at this stage of the proceedings. First, it is not clear

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

to the Court that USCIS did in fact apply new standards when evaluating or re-evaluating plaintiffs' I-526 petitions. Plaintiffs cite to the intervening "Tenant Occupancy" announcement as evidence of the USCIS applying different standards to the subsequent denial of their petitions as were applied at the initial approval of the regional center application. However, USCIS offers argument and evidence in their final decisions to rebut plaintiffs' assertions, contending that the decision was not based upon any heightened standards, but merely a reevaluation of the plaintiffs' evidence. Moreover, given that plaintiffs' new evidence went, in part, towards describing a *new* business project that Innovation LP planned to undertake to fulfill plaintiffs' EB-5 visa obligations, defendants argue that USCIS has not revisited its prior determinations but is evaluating plaintiffs' revised project instead. Plaintiffs have not directed the Court's attention to any particular change in the statutory law, regulations, or immigration case law that was applied to their petitions retroactively.

Plaintiffs' are also unable to make a sufficient showing on their other claim of retroactivity. The statutory scheme at issue expressly contemplates that USCIS should evaluate the evidence supporting a I-526 petition not only at the I-829 stage, but during the two-years after the initial approval of the petition. See 8 U.S.C. § 1186b(b)(1)(B). Although USCIS acted pursuant to § 1155 here instead of the immigrant investor provision, the statutory scheme as a whole clearly contemplates USCIS revisiting prior determinations if it finds them to be in error or otherwise unsupported. Chang, upon which plaintiffs rely, is distinguishable. There, the Court found that the government could not contend that approval of an I-526 petition had no bearing at the I-829 petition stage, because the government had: (1) taken no action in the intervening two years to revoke the I-526 petitions that had been granted; and (2) relied on a new Board of Immigration Appeals (BIA) decision in reaching its conclusion. Id. at 927. Here, by contrast, the USCIS had the authority to revisit its I-529 decision under the plain text of the statutory scheme, which the agency did long before the deadline for I-829 petitions arrived. In addition, USCIS does not appear to rely on new regulatory or interpretative authority in reaching its conclusion. Accordingly, the Court finds that plaintiffs have not demonstrated the requisite likelihood of success on their retroactivity claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

**2.    Arbitrary and Capricious Agency Action and Exceeding Statutory Authority**

A reviewing court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or if the agency acts without observing "procedure required by law," 5 U.S.C. § 706(2)(D). A reviewing court must examine the administrative record to determine whether the agency has "articulated a rational relationship between its factual findings and its decision. . . [and whether] its decision was based on relevant factors and does not constitute a clear error of judgment." Fence Creek Cattle Co. v. U.S. Forest Serv., 602 F.3d 1125, 1132 (9th Cir. 2010). In regards to the USCIS in particular, it is "an abuse of discretion for the Service to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." Kazarian v. U.S. Citizenship & Immigration Services, 596 F.3d 1115, 1118 (9th Cir. 2010). In addition, when an agency offers multiple, independent and adequate grounds for its decision, a court should "affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable." BDPCS, Inc. v. F.C.C., 351 F.3d 1177, 1183 (D.C. Cir. 2003).

Plaintiffs allege numerous grounds for finding defendants' actions to be arbitrary and capricious. Among other grounds, plaintiffs contend that defendants impermissibly found that plaintiffs did not place their funds at risk; failed to provide reasonable methodologies in calculating indirect job creations; failed to spend sufficient capital by an interim deadline; used improper methodology for calculating job creation potential; and that plaintiffs were subject to having their approved petitions revoked, without clear evidence of fraud or a material misrepresentation. See Dkt. No. 6 at 18. Taken together, plaintiffs argue, this amounts to the agency unilaterally imposing novel substantive and evidentiary requirements to plaintiffs' detriment, in addition to revoking any approved petitions on the basis of impermissible criteria. Id. at 19.

The Court finds that plaintiffs have not made a sufficient showing of likelihood of success on their claim that the agency action was arbitrary and capricious. In the detailed and exhaustive administrative decisions, both the initial NOIRs and RFEs and the subsequent notice of revocation and unfavorable decisions, the USCIS appears to thoroughly consider and ultimately reject plaintiffs' arguments in light of the relevant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

criteria. See, e.g., Compl. Ex. G. As noted, the agency found three principal deficiencies: (1) insufficient evidence plaintiffs' capital had been placed at risk; (2) an insufficient comprehensive business plan; and (3) a lack of analysis based on a reasonable methodology for determining job creation. Id.

The Court cannot find that the decision as a whole is likely arbitrary or capricious. In particular, based on a close analysis of the submitted business plan and plaintiffs' proposed changes to that plan, USCIS determined that the revised plan could not qualify as a "comprehensive" business plan under 8 C.F.R. § 204.6(j)(4)(i)(B). The Court is not in a position to second-guess what otherwise appears to be an application of the agency's regulations and substantial expertise in determining that plaintiffs failed to carry their burden of demonstrating that they qualify for participation in the EB-5 program. For this reason alone, plaintiffs do not demonstrate that they are likely to succeed on their arbitrary and capricious claim. In addition, USCIS extensively discussed and rejected both plaintiffs' original and corroborating job creation methodology. See Compl. Ex. G. at 7–11. The agency offered a number of reasons why either of plaintiffs' methodologies were insufficient to meet plaintiffs' burden of demonstrating the required indirect job creation, concluding in part that because "the two approaches have yielded very difference [sic] conclusions, the findings presented in the submitted analyses simply do not appear to be credible." Id. at 11. Because providing a reasonable job creation methodology is a "relevant factor" to the agency's determination and the agency's credibility determination is rationally related to its ultimate decision, the Court cannot conclude that plaintiffs have demonstrated a likelihood of success on this basis.

In addition, plaintiffs contend that defendants acted arbitrarily in another way—by exceeding their statutory authority under the INA. For similar reasons, however, the Court finds that plaintiffs do not demonstrate a likelihood of success on this claim either. First, plaintiffs claim that defendants did not act for "good cause" in revoking their petitions under 8 U.S.C. § 1155. The good cause standard permits revocation "if the evidence of record at the time the decision was issued warranted a denial of the petition." Herrera v. U.S. Citizenship & Immigration Services, 571 F.3d 881, 886 (9th Cir. 2009) (punctuation omitted) (citing with approval to In re Estime, 19 I. & N. Dec. 450, 452 (B.I.A. 1987)). Here, USCIS did articulate a number of reasons why it determined plaintiffs did not qualify for the benefit they sought, based upon plaintiffs' original and subsequent submissions. Because the agency's reasons are directly tied to weighing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

plaintiffs' evidence against the requirements set forth in the governing regulatory and statutory scheme, this decision appears to comport with In re Estime. Second, plaintiffs argue that USCIS articulated new legal criteria that went beyond the "two-step" process Congress contemplated in creating the EB-5 immigrant investor program. However, the Court notes that Congress explicitly provided for an interim measurement, whereby USCIS must terminate the conditional status of an immigrant investor "not conforming to the requirements of section 1153(b)(5)." Given the clear import of this language, the agency's decision to revisit its decision does not appear to be in excess of its statutory authority.

### 3. Due Process Clause

Agency actions can deprive a plaintiff of due process in a variety of ways; plaintiffs argue that the Ninth Circuit's decisions in Singh v. INS, 213 F.3d 1050, 1054 (9th Cir. 2000), and Larita-Martinez v. INS, 220 F.3d 1092, 1095 (9th Cir. 2000), are relevant here. First, Singh held that the application of a new evidentiary standard in a proceeding can result in a denial of a petitioner's due process right to full and fair hearing, which is grounds for granting a petition for review. Second, Larita-Martinez reiterated that USCIS's failure to consider all of the evidence presented by a petitioner could also deprive the petitioner of their due process right to a fair hearing.[4]

Here, the Court cannot conclude that plaintiffs have demonstrated a sufficient likelihood of success on their due process claim. In both the initial NOIRs and RFEs and the subsequent revocation and denial notices, USCIS extensively discussed and considered plaintiffs' proffered evidence in reaching its determination. Defendants found plaintiffs' evidence insufficient to qualify plaintiffs for participation in the EB-5 program, for the reasons discussed previously, and therefore denied or revoked plaintiffs' petitions. Plaintiffs argue that they presented new evidence in response to defendants' concerns regarding plaintiffs' proposed job-creation methodology, but it appears that USCIS considered this new evidence in making its final determination.

---

[4] The Court is not convinced these holdings apply in their entirety outside of the asylum-hearing context but for purposes of ruling on the instant application will consider these decisions as controlling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

In addition, the Court does not find that plaintiffs have demonstrated a likelihood of success on their claim that defendants applied a new evidentiary standard in adjudicating their petitions, in violation of plaintiffs' rights to a full and fair hearing. The Court is unable to find clear evidence in the administrative record that defendants applied a heightened or different evidentiary standard in evaluating plaintiffs' petitions, particularly in light of the new evidence that plaintiffs' submitted in response to the NOIRs and RFEs. Instead, as noted previously, defendants appear to have closely evaluated all of the evidence plaintiffs submitted—including weighing the deviations from Innovation LP's original proposal—in deciding that plaintiffs were unable to demonstrate that they qualified for the immigration benefits at issue. Plaintiffs may yet be able to show that defendants violated their rights to due process, but the Court finds their showing to be insufficient for purposes of this motion. Accordingly, the Court finds that plaintiffs have not carried their burden with respect to demonstrating a likelihood of success on their due process challenge.

In sum, weighing all of plaintiffs' arguments on the merits, the Court finds that the likelihood or "fair chance" of success on the merits factor favors defendants. Plaintiffs have not carried their significant burden at this stage of demonstrating they are entitled to a temporary restraining order on the merits.

 B. **Irreparable Harm**

Undoubtedly, plaintiffs deportation from this county would cause them irreparable harm, but there are no pending removal proceedings against plaintiffs here. Therefore, the risk of deportation is speculative at present, although the Court is cognizant of the fact that this could change in the future. Plaintiffs' claimed harms—loss of work authorization, family separation, and inability to travel—are very significant, though not clearly irreparable for the purposes of granting preliminary injunctive relief. As such, plaintiffs may suffer irreparable injuries if temporary relief is not granted here, but the likelihood of some of plaintiffs' claimed harm is more remote than would be the case with removal proceedings, for example.[5] On this record, the Court is unable to conclude

---

  [5] The Court agrees with defendants that plaintiffs claimed harm under the Child Status Protection Act is also speculative at this stage. Should the Court find that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

that irreparable harm is *likely*, as required under Winter. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (holding that a "possibility" of irreparable harm is insufficient); Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 996 (9th Cir. 2011) (discussing Winter's application in the Ninth Circuit).

### C. Balance of Hardships and Public Interest

Where the government is the defendant, consideration of the balance of hardships and the public interest merges into a single inquiry. Nken v. Holder, 556 U.S. 418, 435–36 (2009). Plaintiffs here may suffer significant and possibly irreparable hardship from the denial of their visa benefits, but the government also has a significant interest in enforcing the statutory framework governing the immigrant entrepreneur program. This is particularly true in light of Congress's mandate that USCIS ensure that immigrant investors are in compliance with the statutory requirements throughout the two-year period prior to these investors obtaining lawful permanent residency. The number of participants in the EB-5 program is limited by statute, and the government has an interest in ensuring that these visas are equitably distributed to deserving participants. Moreover, plaintiffs' request for relief is extraordinary in that it would require the Court to compel administrative agency action in a situation where a decision is otherwise committed to the agency's discretion—a significant encroachment by an Article III court onto the authority

---

defendants acted arbitrarily and capriciously or otherwise in violation of law, a remand to the agency would be in order, at which point plaintiffs' petitions would again be pending before the agency, likely entitling their children to protection if approved. See De Osorio v. Mayorkas, 09-56846, 2012 WL 4373336 (9th Cir. Sept. 26, 2012) (en banc) (holding that "[a]utomatic conversion and priority date retention are available to all visa petitions identified in subsection (h)(2)," which includes the visas at issue in this case).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-7893-CAS (AGRx) | Date | October 3, 2012 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. V. U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

of the executive branch.[6] In short, although this factor still favors plaintiffs, the hardship imbalance does not tip overwhelmingly in their favor.

**V.    CONCLUSION**

Weighing the relevant factors, the Court finds that plaintiffs have not made a sufficient showing entitling them to a temporary restraining order. Accordingly, plaintiffs' application for a TRO is hereby DENIED. In light of the potential hardships to plaintiffs here, the Court sets a status conference for **October 11, 2012 at 1 p.m.**

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |

---

[6] The government also argues that this Court lacks jurisdiction to order affirmative injunctive relief in this case pursuant to Administrative Procedure Act § 705, 5 U.S.C. § 705. Opp'n at 25. However, in light of this Court's denial of plaintiffs' application for a temporary restraining order, the Court declines to consider this jurisdictional question at this time.