## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ira Kurzban | Sarah Maloney |

**Proceedings:**     PLAINTIFFS' MOTION TO HOLD IN ABEYANCE DEFENDANTS' MOTION TO AFFIRM THE AGENCY'S DECISIONS (Dkt. No. 38, filed February 23, 2015)

## I.     INTRODUCTION

On September 13, 2012, plaintiffs Courtney Carlsson, et al., filed the instant complaint for declaratory and injunctive relief against defendants United States Citizenship and Immigration Services ("USCIS"); Janet Napolitano, Secretary of the U.S. Department of Homeland Security; Alejandro Mayorkas, Director of USCIS; and Rosemary Melville, Director of USCIS California Service Center. Dkt. No. 1. Plaintiffs are a group of immigrant investors who were denied conditional residency in the United States after USCIS denied or revoked their petitions to gain immigration status as alien entrepreneurs. On February 12, 2014, plaintiffs filed the operative First Amended Complaint ("FAC"). Dkt. No. 27.

On January 25, 2015, defendants filed a motion for an order affirming the agency's decisions, noticed for hearing on April 20, 2015. Dkt. No. 34. On February 23, 2015, plaintiffs filed a motion to hold in abeyance defendants' motion pursuant to Federal Rule of Civil Procedure 56(d), pending further discovery. Dkt. No. 38. Defendants filed an opposition on March 2, 2015, and plaintiffs replied on March 9, 2015. Dkt. Nos. 44, 46. On March 23, 2015, the Court held a hearing on the motion, at which counsel for the parties appeared and argued. After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL        'O'

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

## II.    BACKGROUND

### A.    EB-5 Visas and the Immigrant Investor Pilot Program

Under the Immigration and Nationality Act of 1990 ("INA"), codified at 8 U.S.C. § 1153(b)(5), certain immigrant investors are eligible to obtain "EB-5 visas" and eventually, lawful permanent resident status.[1] See Chang v. United States, 327 F.3d 911, 916 (9th Cir. 2003). Immigrants are eligible if they (1) have invested or are in the process of investing a specified amount of capital in commercial enterprises, and (2) can demonstrate that the investment will create ten or more jobs for United States workers. In "targeted employment areas," like the one at issue in this case, a minimum investment of $500,000 is required. 8 U.S.C. § 1153(b)(5)(B)(ii), (b)(C)(ii); 8 C.F.R. § 204.6(f)(2). The burden of proof is on the petitioner. 8 U.S.C. § 1361; 8 C.F.R. § 204.6(m)(7).

Under amendments establishing the EB-5 program, immigrant investors may pool their capital in "regional centers," or "any economic unit . . . which is involved in the promotion of economic growth, including. . . improved regional productivity, job creation, and increased domestic capital investment." 8 C.F.R. § 204.6(e); see id. § 204.6(m) (discussing the "Immigrant Investor Pilot Program" ["Pilot Program"]). Only regional centers that have been approved by USCIS are eligible to participate in the program.[2] 8 C.F.R. § 204.6(m)(4). The requirement that each participant investor directly create ten or more jobs is relaxed under 8 C.F.R. § 204.6(m)(7)(ii), which allows an immigrant investor to prove they have "indirectly" created jobs through "reasonable methodologies." Other than the acceptance of indirect job creation, described above, the

---

[1] The "EB-5" designation comes from the fact that the "immigrant investor program is the fifth preference in the 'employment-based' visa preference category." R.L. Inv. Ltd. Partners v. INS, 86 F. Supp. 2d 1014, 1016–17 (D. Haw. 2000). The Court uses the term "immigrant investors" interchangeably with the term "alien entrepreneurs," which the applicable statutes and regulations often use.

[2] Such approval requires a demonstration through "economically or statistically valid forecasting tools" how its proposed activities will positively impact the region's development. 8 C.F.R. § 204.6(m)(3)(v).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|--------------------------|------|----------------|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

Pilot Program "does not relieve individuals seeking to immigrate to this country as alien entrepreneurs from any of the other requirements of section 203(b)(5) of the [Immigration and Nationality] Act or 8 C.F.R. § 204.6." 58 Fed. Reg. 44,607.

To participate in the EB-5 program, prospective immigrant investors must file I-526 petitions based upon their investment and business plans, which upon approval, grant immigrant investors the right to enter the country as conditional legal permanent residents. Chang, 327 F.3d at 916; 8 C.F.R. § 204.6(a). Under the Pilot Program, the petition must prove that the alien has invested or "is actively in the process of investing" the required amount of capital within an approved regional center, and that this capital has been placed "at risk" by the investment. 8 C.F.R. § 204.6(j)(4)(2), (3). The petition must also show "that the investment will create full-time positions for not fewer than 10 persons either directly or indirectly." Id. § 204.6(j)(4)(iii). If USCIS approves the petition, the alien entrepreneur and their spouse and children, if under the age of 21 at the time the I-526 petition was filed, are eligible for conditional legal permanent resident status. 8 U.S.C. § 1186b(a)(1); see id. § 1153(h)(1). USCIS may not revoke the I-526 approval except for "good and sufficient cause," after providing notice to the petitioner. 8 U.S.C. § 1155; 8 C.F.R. § 205.2(c).

Thereafter, the alien entrepreneur must file USCIS Form I-829 in order to remove the "conditional" nature of his or her lawful permanent resident status. 8 U.S.C. § 1186b(c); 8 C.F.R. § 216.6(a). The I-829 approval procedure is "intended to confirm that the petitioner fulfilled the plan set out in the I-526 petition." Chang, 327 F.3d at 927. The petition must demonstrate that the alien: (1) "invested, or is actively in the process of investing" the required amount of capital; (2) "sustained" the investment throughout the conditional period; and (3) is otherwise "conforming to the requirements" set forth in § 1154(b)(5), including that of job creation. 8 U.S.C. § 1186b(d)(1); 8 C.F.R. § 216.6(a)(4). If the petition is denied, the alien's resident status is terminated as of the date of that determination

**B.     The Administrative Proceedings Underlying This Case**

On December 15, 2008, American Life Development Company ("ALDC") submitted a proposal for regional center designation. FAC ¶ 39. According to plaintiffs, the proposal noted that in many cases, developers working through the regional center

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

would develop a property in anticipation of future tenants; in such cases, the direct job creation impacts of the future tenants would be estimated based on generic building design specifications from the National Institute of Building Sciences, and those direct job creation estimates would become inputs in a model known as "Impact Analysis for Planning" ("IMPLAN"), a method for estimating indirect job creation impacts. Id. On June 23, 2009, USCIS approved ALDC's regional center proposal under the Pilot Program. Id. ¶ 40. On October 12, 2010, USCIS approved an amended designation for ALDC, altering the scope of targeted investment industries to include "Light Industry/Warehouse" development, and expanding its geographic scope to include all of Riverside County, California. Id. ¶ 42. The amendment application also noted that the regional center would sponsor development projects for which the tenants would not initially be known, and that future tenants' job-creation impacts would be estimated using IMPLAN. Id. ¶ 43. Plaintiffs allege that both of these approvals stated that an I-526 application based on investment in ALDC "need not show that the new commercial enterprise created ten new jobs indirectly" because that determination for purposes of the I-526 stage was "established by way of USCIS'[s] acceptance of the final economic analysis that is contained as part of the approved Regional Center proposal." Id. ¶¶ 41, 44.

On January 7, 2011, a limited partnership named 14575 Innovation Drive Limited Partnership ("Innovation LP") was established to acquire and develop a parcel of real property in Riverside, California. At the time plaintiffs' I-526 petitions were submitted, the project's sponsor anticipated that this property's then-unknown future tenants would use the two single-story buildings on the property for a mix of office, industrial, or warehouse use. Id. ¶¶ 45, 47. The partnership attracted twenty-three investors and raised $11,500,000. Id. ¶ 46. Although plaintiffs anticipated having multiple tenants, they subsequently leased the entire property to a single tenant, who relocated from Los Angeles County, California and used the property for warehouse and office space. Id. ¶¶ 50–53. Plaintiffs maintain that this tenant has "created jobs for 249 workers," and that the "total number of indirect jobs projected to be created in Riverside County is estimated at 288." Id. ¶ 54. Plaintiffs submitted I-526 petitions based on this project.

During the fourth quarter of 2011, USCIS approved eight of the I-526 petitions filed by Innovation LP investors. Id. ¶ 59. Carlsson's was approved on November 18, 2011. A.R. 2173–79, 2788. In April 2012, however, USCIS began issuing "Notices of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

Intent to Revoke" the previous approvals, and "Requests for Evidence" for investors whose petitions had not yet been approved. FAC ¶ 59; A.R. 2788–96. Plaintiffs allege that these notices and requests were "virtually identical." FAC ¶ 59. In August 2012, defendants began denying the petitions of investors who had received Requests for Evidence, and revoking petitions they had previously approved. FAC ¶¶ 60, 62. Carlsson's approval was revoked on August 3, 2012. Defendants submit that the approval was revoked because of inconsistencies in submitted documentation and a failure to provide a reasonable and adequately explained methodology for predicting indirect job growth. A.R. 2123–35. Plaintiffs contend that this change of course was based on "numerous incorrect assumptions regarding Plaintiffs' investment and job creation," and was otherwise improper. See, e.g., FAC ¶¶ 60, 61.

This litigation commenced on September 13, 2012. Pursuant to mediation efforts, defendants reopened the petitions in July 2013 and requested additional evidence, but issued new denials on all plaintiffs' petitions on November 27, 2013. Id. ¶¶ 63–64. Defendants contend that Carlsson (like the other plaintiffs) failed to demonstrate that she "placed the full amount of EB-5 capital at risk" and did not "carr[y] her burden of establishing the requisite job creation" because she "failed to submit . . . documentation on which to base the commercial enterprise's ability to create 10 positions for qualifying employees within the next two years" or "demonstrate that the enterprise has the potential to meet the job creation requirement through the use of reasonable methodologies to show indirect job creation." Dkt. No. 44 at 3–4 (citing A.R. 2106–19). Plaintiffs contend that these new denials, too, were factually and legally erroneous. FAC ¶¶ 65–70.

The operative FAC advances four claims for relief. Count I asserts that defendants retroactively applied new rules, policies, and criteria in the adjudication of plaintiffs' I-526 applications, specifically departing from the adjudicatory standards regarding job-creation that were in effect at the time plaintiffs invested in the ALDC regional center. Plaintiffs allege that this retroactive application violated standards set forth in Montgomery Ward v. FTC, 691 F.2d 1322 (9th Cir. 1982), Chang v. United States, 327 F.3d 911 (9th Cir. 2003), and Garfias–Rodriguez v. Holder, 702 F.3d 504 (9th Cir. 2012) (en banc). Id. ¶¶ 95–107. Counts II and III claim that the agency decisions should be overturned under the Administrative Procedures Act ("APA") as arbitrary and capricious and exceeding the statutory authority allocated to USCIS. Id. ¶¶ 108–21. Count IV maintains that defendants denied plaintiffs' due process rights by retroactively applying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|--------------------------|------|----------------|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

new policies, failing to consider certain evidence, and citing alleged defects in plaintiffs' final denials without affording plaintiffs an opportunity to meaningfully respond.  Id. ¶¶ 122–28.

### C.    Defendants' Motion for an Order Affirming the Agency's Decisions

On January 26, 2015, defendants filed a motion for an order affirming the agency's decisions on plaintiffs' I-526 petitions under the agency review standards of the APA. Dkt. No. 34.[3]  Defendants argue that these denials should be affirmed on the basis of three independently sufficient reasons offered in support thereof, because each reason is based on the plain language of the relevant statute or, in the alternative, a permissible interpretation of a statute or agency regulation entitled to deference under Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), or Auer v. Robbins, 519 U.S. 452, 461 (1997).

First, defendants contend that the denials are supported by the agency's conclusion that investors may not fulfill the EB-5 visa program's job creation requirements by relocating jobs already in existence elsewhere, and that virtually all of the jobs at issue were relocated from Los Angeles County.  Dkt. No. 34 at 10–17.  Second, defendants argue that USCIS correctly concluded that independent contractors cannot be used as qualifying employees in calculating indirect job creation.  Id. at 17–21.  Third, defendants submit that USCIS correctly concluded that only full-time, permanent employment may be used to satisfy the job creation requirement, and that plaintiffs did not provide sufficient evidence to support their claim that independent contractor truck drivers who work seasonally with schedules that fluctuate based on demand should be counted as full-time, permanent employees.  Id. at 21–25.

---

[3]Before filing that motion, defendants served on plaintiffs' counsel the certified administrative record for this case.  See Dkt. No. 44 at 1.  Defendants filed this record with the Court in CD form on March 2, 2015.  Dkt. No. 43.  The administrative record relates to the denial of Courtney Carlsson's I-526 petition; defendants submit that her petition is "identical to" those of the other plaintiffs.  Dkt. No. 44 at 1–2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
| --- | --- | --- | --- |
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

## III.   LEGAL STANDARDS

### A.   The Record for Review of Agency Action Under the APA

Reviewing a final agency determination under the APA "does not require fact finding," and is "limited to the administrative record." Nw. Motorcycle Ass'n v. U.S. Dep't of Agriculture, 18 F.3d 1468, 1472 (9th Cir. 1994). In such a case, the district court "sits as an appellate tribunal" and the " 'entire case' on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001); see Occidental Eng'g Co. v. INS, 753 F.3d 766, 769 (9th Cir. 1985) ("[The district] court is not required to resolve any facts in a review of an administrative proceeding."). Thus, "judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court." Lands Council v. Powell, 395 F.3d 1019, 1029 (9th Cir. 2004) (internal quotation marks and brackets omitted). "The 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." Thompson v. U.S. Dep't of Labor, 885 F.2d 551, 555 (9th Cir. 1989) (further internal quotation marks and citation omitted). "The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary," but "[w]hen a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question." Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993) (citation omitted); see McCrary v. Gutierrez, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) ("An agency's designation and certification of the administrative record is treated like other administrative procedures, and thus entitled to a presumption of administrative regularity.").

"In limited circumstances, district courts are permitted to admit extra-record evidence (1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.' " Lands Council, 395 F.3d at 1030 (quoting Sw. Ctr. for Bio. Diversity v. U.S. Forest Service, 100 F.3d 1443, 1450 (9th Cir. 1996)). "[T]hese exceptions are narrowly construed and applied" so as to "not undermine the general rule."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|-------------------------|------|----------------|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

Id.; accord Fence Creek Cattle Co. v. U.S. Forest Serv., 602 F.3d 1125, 1131 (9th Cir. 2010).  Federal courts are not to "routinely or liberally admit new evidence when reviewing agency decisions."  Lands Council, 395 F.3d at 1030.  A district court "does not take testimony" in an APA case "[a]bsent very unusual circumstances."  Am. Bioscience, 269 F.3d at 1084.

## B.     Federal Rule of Civil Procedure 56(d)

Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).[4]  "The burden is on the party seeking additional discovery."  Chance v. Pac-Tel Teletrac, Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  That party "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exists; and (3) the sought-after facts are essential to oppose summary judgment."  Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008).  "Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.' "  Id. (quoting California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998)).

Still, "summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim."  Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004).  Therefore, Rule 56(d)

---

[4]As of the 2010 amendments to the Federal Rules of Civil Procedure, Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 45, advisory committee's notes (2010 amendments).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

"require[s], rather than merely permit[s], discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.' " Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)).  Denying a Rule 56(d) motion is disfavored where a party timely identifies relevant information and "there is some basis for believing that the information sought actually exists." VISA Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986).  However, "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence . . . that might tend to support a complaint." Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386, 1389 (Fed. Cir. 1989) (quoting Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1566–67 (Fed. Cir. 1987)).

## IV.  ANALYSIS

Plaintiffs argue that they need discovery and a continuance of defendants' pending motion in order to fairly advance their APA claims, their retroactivity claims, and their due process claims.  The Court addresses each category of claims in turn.

### A.  Plaintiffs' APA Claims

Despite the heavy presumption against supplementing the record or considering extra-record evidence in an APA case, plaintiffs argue that discovery is needed to ensure that this case proceeds on the "whole record," or under two exceptions to the record rule. The Court is not persuaded.

#### 1.  "Whole Record"

Arguing that the existing administrative record is not the "whole record," plaintiffs contend that it is "unfathomable that the USCIS adjudicators . . . consulted no agency guidance documents, sought no opinions of USCIS's many expert economists . . . and reviewed no documents other than Plaintiffs' own detailed complex IMPLAN-based submissions and expert opinions."  Therefore, plaintiffs contend, the existing record is incomplete because it does not contain economic analysis by USCIS's own economic experts.  Plaintiffs also protest that the existing administrative record "does not contain the job forecasting methodology included in the ALDC regional center approval and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**             **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

amendment applications, even though USCIS expressly stated that it would treat [] its acceptance of that methodology as sufficient evidence that individual investors in the regional center satisfied the EB-5 job creation requirements."  Plaintiffs additionally maintain that "nothing in the record suggests that Defendants considered whether any jobs unaffected by Defendants' adjudicatory policies regarding job-creation were sufficient to approve at least <u>some</u> of the project investors' petitions."  Dkt. No. 38 ¶ 36 (emphasis in original); <u>see also</u> Dkt. No. 46 at 11–12.  Plaintiffs argue that without discovery, it is "impossible to determine if USCIS acted arbitrarily or capriciously in refusing to grant deference to the methodology included in" the ALDC regional center application.  <u>Id.</u> at 12.

Defendants respond that plaintiffs have failed to meet their burden of showing that the record should be supplemented because plaintiffs "do not identify <u>any</u> documents that they provided USCIS that are missing from the administrative record" and "do not point to <u>any</u> other document that USCIS's denials relied on . . . that is not in the record," instead offering only "speculation and surmise about the possibility that the administrative record is incomplete."  Defendants maintain that the burden was on plaintiffs to show indirect job creation through a reasonable methodology, and that it was USCIS's role to evaluate the submitted methodology—not to provide its own economic analyses.  Defendants argue that the denial notice included in the existing record "cites the appropriate statutes and regulations, analyzes Plaintiffs' evidence, and renders a legal conclusion based on the documents <u>Plaintiffs</u> submitted."  Defendants also assert that plaintiffs' protest that the administrative record does not contain the ALDC's regional center application job forecasting methodology is a merits argument, not a reason to supplement the record or allow discovery.  Dkt. No. 44 at 11–14 (emphasis in original).

The Court finds that plaintiffs have not met their burden of rebutting, through clear evidence, the presumption that the administrative record was properly designated.  "[T]he mere fact that certain information is not in the record does not alone suggest that the record is incomplete."  <u>Amfac Resorts, LLC v. U.S. Dep't of the Interior</u>, 143 F. Supp. 2d 7, 13 (D.D.C. 2001).  Without expressing any opinion as to the merits of plaintiffs' APA claims, the denial notice includes legal and evidentiary reasoning for rejecting Carlsson's petition for the reasons cited in defendants' pending motions, and plaintiffs have not pointed to concrete indications that the denials were actually based on USCIS's own

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                     **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

economists' opinions or other guidance not disclosed on the record.[5]  See Nat'l Mining Ass'n v. Jackson, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (party seeking to rebut presumption of regularity must present "concrete evidence that the documents it seeks to add . . . were actually before the decisionmakers," and "[c]onclusory statements will not suffice" (internal quotation marks and citations omitted)).  And to the extent that plaintiffs argue the record fails to indicate whether the agency considered whether some (but not all) of the petitions should have been approved, or failed to properly consider ALDC's previously approved jobs forecasting methodology, those appear to be merits arguments rather than evidence-backed reasons for allowing discovery on APA claims. Finally, even assuming *arguendo* that the administrative record should include the ALDC forecasting methodology, it is unclear why plaintiffs need discovery to rectify that deficiency, since plaintiffs are presumably in possession of that methodology and may seek to persuade the Court to look to it in opposing defendants' motion.

2.      Complex Subject Matter

Plaintiffs also argue that "indirect job-creation forecasting methodologies such as the input-output IMPLAN model USCIS approved at the regional center application stage involve 'complex subject matter' warranting discovery" including expert witnesses who can explain "inconsistencies" in defendants' adjudicatory policies. Dkt. No. 38 ¶ 34. Plaintiffs elaborate that because IMPLAN and similar models estimate indirect job-creation impacts using economic assumptions, "the full implications of accepting a methodology such as IMPLAN as 'reasonable' are not obvious on their face." Dkt. No. 46 at 11.  Therefore, plaintiffs argue, they need discovery "to show why USCIS's

---

[5]To the extent that plaintiffs seek to discover and add to the record deliberations or communications between agency staff, such material is not properly part of an administrative record.  See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 156 F.3ed 1279, 1279 (D.C. Cir. 1998) ("When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its stated reasons.  Agency deliberations not part of the record are deemed immaterial." (citations omitted)); Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs., 631 F. Supp. 2d 23, 27 (D.D.C. 2009) ("[I]nternal deliberative materials are not part of the administrative record.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|--------------------------|------|----------------|
| Title    | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

acceptance of IMPLAN as a reasonable forecasting methodology is inconsistent with its argument in this case that the regulations governing direct 'employment' apply with full force to the indirect jobs IMPLAN forecasts."  Id.

Plaintiffs cite Asarco, Inc. v. EPA, 616 F.2d 1153 (9th Cir. 1980), in which the Ninth Circuit stated, "[i]t will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all the relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not."  Id. at 1160.  But that statement must be taken in the context of that case, which involved the EPA's requirement that a copper producer install additional sampling facilities to measure the amount of particulate matter being emitted after certain chemical reactions had taken place.  Id. at 1155–57. After reviewing precedent governing the scope of agency review and noting the tension between "straitjacketing" reviewing courts and avoiding courts' substitution of their own judgment for that of the agency, the Ninth Circuit stated that "[i]f the reviewing court finds it necessary to go outside the administrative record, it should consider evidence relevant to the substantive merits of the agency action only for background information . . . or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its . . . grounds of decision."  Id. at 1159–60.  The court then held that a district court had gone "too far" in accepting live testimony and numerous exhibits in a hearing reviewing the EPA's decision.  Id. at 1160–61.

On the record before the Court, plaintiffs have not demonstrated that the complexity of the subject matter justifies discovery.  Even assuming (without so deciding) that it would be proper to look to extra-record expert testimony for the limited purposes contemplated in Arasco, plaintiffs have not connected that proposition to a need to conduct discovery.  It is clear that plaintiffs have engaged economic experts throughout the course of the agency proceedings, and it is not clear why plaintiffs could not through due diligence have previously obtained any expert reports they feel are necessary to provide context to their opposition to defendants' motion.  It is even less clear why plaintiffs need discovery from defendants in order to provide economic explanation "for background information . . . or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its . . . grounds of decision."  Arasco, 616 F.2d at 1159–60.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

3.    All Relevant Factors

Finally, plaintiffs submit that "there are good reasons to believe USCIS has failed to 'consider[] all relevant factors' " because USCIS "appears not to have considered whether some investors' petitions could be approved." Dkt. No. 38 ¶ 35.[6] Defendants respond that the "relevant factors" exception applies only where the agency fails to consider "an 'entirely new' general subject matter," not where an agency ignored " 'nuanced points' about a particular issue." Pinnacle Armor, Inc. v. United States, 923 F. Supp. 2d 1226, 1234 (E.D. Cal. 2013).

Keeping in mind that the relevant standard for supplementing an administrative record on this basis is whether supplementation is "necessary to determine whether the agency has considered all relevant factors," City of Las Vegas v. Fed. Aviation Admin., 570 F.3d 1109, 1116 (9th Cir. 2009), the Court finds that plaintiff has not shown that this is an exceptional case where discovery is needed to determine whether the agency failed to consider an entire subject matter. As indicated above, plaintiffs' argument that the agency failed to consider whether the submitted evidence was sufficient to support the approval of some (but not all) petitions appears to be a merits argument, not a reason to delay adjudication of defendants' motion while plaintiffs conduct discovery. Moreover, courts have drawn a distinction between this exception to the record rule and others,

_____

[6]Plaintiffs also maintain that additional evidence establishing their visa eligibility "has been presented to the agency following the adverse decisions contained in the administrative record." Dkt. No. 38 ¶ 35. This does not support supplementing an administrative record to better determine if the agency made a rational decision based on the evidence before it at the time of those decisions. See Thompson, 885 F.2d at 555–56 ("The Supreme Court has stated that judicial review is to be based on the full administrative record before the agency when it made its decision." (emphasis in original) (citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971))); Tri-Valley CAREs v. U.S. Dep't of Energy, 671 F.3d 1113, 1130 (9th Cir. 2012) ("[E]xceptions to the normal rule regarding consideration of extra record materials 'only appl[y] to information available at the time, not post-decisional information." (quoting Rock Creek Alliance v. U.S. Fish & Wildlife Serv., 390 F. Supp. 2d 993, 1002 (D. Mont. 2005))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|-------------------------|------|----------------|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

explaining that because generally the "record itself will reveal whether non-record review is merited . . . . a party seeking non-record review has everything at its disposal (i.e., the record) needed to successfully urge the Court to look beyond the record." Amfac Resorts, LLC v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 11–12 (D.D.C. 2001) (contrasting this record rule exception with others for which the "only way a non-agency party can demonstrate to a court the need for extra-record judicial review is to first obtain discovery"). Accordingly, this argument does not provide a reason to delay defendants' pending motion for discovery purposes.

In sum, plaintiffs have not overcome the presumptions that an administrative record was properly designated, and that discovery is not necessarily needed even if a party seeks to admit extra-record evidence. As one district court has explained:

> To obtain discovery from an agency in an APA case, a party must overcome the standard presumption that the "agency properly designated the Administrative Record." Bar MK Ranches, 994 F.2d at 740. That is, a party must provide good reason to believe that discovery will uncover evidence relevant to the Court's decision to look beyond the record. Thus, a party must make a significant showing . . . that it will find material in the agency's possession indicative of bad faith or an incomplete record.

Amfac Resorts, 143 F. Supp. 2d at 12. Plaintiffs have failed to make such a "significant showing." At most, plaintiffs have advanced various arguments that the Court should look beyond the existing record; they have made no clear showing that they will find material in defendants' possession that will be "relevant to the Court's decision to look beyond the record." Accordingly, plaintiffs have not presented a persuasive reason to hold in abeyance defendants' motion for the purposes of discovery aimed at supplementing the administrative record on plaintiffs' APA claims. The Court notes that it reaches this conclusion without prejudice to plaintiffs arguing in opposition to defendants' motion that the Court should consider specified extra-record evidence for limited purposes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|-------------------------|------|----------------|
| Title    | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

### B.    Plaintiffs' Retroactivity Claims

Plaintiffs argue that, even if the agency's decision was facially reasonable under the APA, plaintiffs can still prevail on their independent claim that USCIS impermissibly applied new policies to their claim—and that plaintiffs need discovery in order to do so. The crux of plaintiffs' retroactivity argument is roughly as follows: (1) when plaintiffs invested in the ALDC project, defendants maintained a policy of deferring to the job-creation forecasting methodologies included in the regional center's previously approved application, and did not require individual investors to prove job creation; (2) defendants "abruptly abandoned" that policy when they adjudicated plaintiffs' petitions; and (3) defendants retroactively applied new interpretations of specific regulations in plaintiffs' cases. Id. ¶ 24. Plaintiffs contend that a fully developed factual record is necessary because retroactivity analysis is necessarily "case-by-case." Garfias–Rodriguez, 702 F.3d at 519. Plaintiffs point out that one of the retroactivity factors the Ninth Circuit applies is "whether the new rule represents an abrupt departure from well established practice," Chang, 327 F.3d at 929, and argue that discovery is necessary to determine what adjudicatory practices USCIS employed when plaintiffs invested in the ALDC regional center and filed their petitions.[7] Dkt. No. 38 ¶ 26.

Plaintiffs acknowledge that the existing record contains some material with which they can advance their retroactivity claim, including "agency guidance issued in

---

[7]The Ninth Circuit applies a five-factor test first articulated by the D.C. Circuit:

(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

Garfias–Rodriguez, 702 F.3d at 518 (quoting Montgomery Ward & Co. v. FTC, 691 F.2d 1322, 1328 (9th Cir. 1982)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

December 2009 . . . stat[ing] that '[p]ositions filled by independent contractors . . . may [] be credited for EB-5 job creation purposes." Id. ¶ 27. But plaintiffs argue that, in the main, the existing administrative record "will reveal only the agency's final destination in an abrupt policy shift, but contain no information regarding policies" as they existed at the time of plaintiffs' investments. Id. ¶ 30. Plaintiffs therefore maintain that discovery is necessary to "prove the agency's abrupt change in policy" through evidence including:

- agency guidance and training manuals discussing the relationship between USCIS's approval of a job-creation methodology in a regional center's designation application and USCIS's adjudication of related I-526 petitions;
- USCIS decisions on I-526 petitions filed in other regional center projects;
- USCIS Headquarters guidance on the evidence investors in approved regional centers must include in their I-526 petitions;
- deposition testimony of agency adjudicators and policy makers regarding changes to USCIS's adjudicatory practices on job-creation for investors in an approved regional center; and
- responses to interrogatories and requests for admission regarding the "nature and timing of Defendants' shift away from the policy stated in the regional center approval notice, which represents that investors in ALDC regional center projects need not include evidence of job-creation" in their I-526 petitions.

Id. ¶ 29. Plaintiffs argue that they need such evidence from a time period that begins before approval of the ALDC regional center and runs through USCIS's final adjudications of plaintiffs' petitions. Id.

Defendants respond that plaintiffs have failed to "identify by affidavit the specific facts that further discovery would reveal," and have instead "simply outline[d] the discovery they want to pursue in the hope of uncovering a new policy." Dkt. No. 44 at 15 (citing Tatum, 441 F.3d at 1100). Defendants also take issue with plaintiffs' characterization of the administrative record as lacking evidence of the agency's policies as they existed before plaintiffs filed their petitions, asserting that the existing record contains (1) all documents Carlsson filed in support of her petition and the agency's initial approval notice, subsequent notice of intent to revoke, notice of revocation, notice of reopening and request for evidence, and second denial notice; (2) "extensive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

reasoning" outlining the basis for the denials; and (3) approval notices for the ALDC regional center "outlin[ing] the economic modeling that individual petitioners may use and the types of evidence that individual petitions must submit along with the standards for adjudicating the petitions." <u>Id.</u> at 16–17.

Plaintiffs reply that the record's documents concerning Carlsson's application and decision reveal "nothing about how the agency evaluated job-creation in cases <u>predating</u> Plaintiffs' investments." Dkt. No. 46 at 6 (emphasis in original). Plaintiffs also point to the Ninth Circuit's statement that a Rule 56(d) motion should be granted "fairly freely" where the opposing party "has not had any realistic opportunity to pursue discovery relating to its theory of the case," because in such a case the opposing party "cannot be expected to frame its motion with great specificity." <u>Burlington N. Santa Fe. R.R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation</u>, 323 F.3d 767, 777 (9th Cir. 2003). In light of the absence of previous discovery in this case, plaintiffs argue that the following stated facts they hope to obtain are more than sufficient to meet their burden:

> (1) at the time Plaintiffs invested in the regional center project, Defendants maintained an adjudicatory practice that allowed the investors to rely on the agency's prior approval of a job forecasting methodology . . . ; (2) in evaluating whether a job-forecasting methodology is reasonable, the agency permitted independent contractors to be used as inputs into IMPLAN for purposes of projecting indirect job-creation, looked to the geographic scope of the USCIS-approved regional center to determine job creation, and required no independent evidence that new jobs created are "full time" as defined in the agency regulations governing direct employment; and (3) the agency abruptly departed from these adjudicatory practices <u>after</u> Plaintiffs made their $500,000 investments in reliance on the agency's prior adjudicatory practices.

Dkt. No. 46 at 3–4 (emphasis in original). Plaintiffs assert that the aforementioned documents from before and after plaintiffs' investments will show that the interpretations behind USCIS's denials were adopted only after plaintiffs had filed their petitions. Plaintiffs also assert that depositions "could clarify the nature and timing of relevant policy shifts . . . and the claimed statutory interest for the policy change." <u>Id.</u> at 4–5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              'O'

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|---|---|---|---|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

Defendants also contend that discovery is unnecessary to analyze the retroactivity factors because neither Garfias–Rodriguez nor subsequent immigration cases applying it turned on the development of facts outside of the administrative record. But as plaintiffs point out, all of these cases involved appeals of removal orders from the BIA directly to the Court of Appeals,[8] where the scope of review is statutorily limited to "the administrative record on which the order of removal is based," and the "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(A), (B). Chang is more factually analogous, because it involved an appeal of a denial of EB-5 visa petitions to a district court, and the Ninth Circuit in that case expressly distinguished the record required for proper review from that allowed in BIA removal proceedings. 327 F.3d at 924; see also McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 497 (1991) ("[S]tatutes that provide for only a single level of judicial review in the courts of appeals 'are traditionally viewed as warranted only in circumstances where district court factfinding would unnecessarily duplicate an adequate administrative record.").

After the Chang plaintiffs had structured their investments in a way that complied with then-existing government policy, the agency established new rules that disqualified the plaintiffs' investments as loans instead of at-risk capital. The government then applied those new rules to reject the plaintiffs' I-829 petitions, even though the plaintiffs had fulfilled the plans in their previously approved I-526 petitions. Id. at 916–17. The plaintiffs raised equitable estoppel, APA, and impermissible retroactivity claims in the district court, which granted a motion to dismiss the estoppel and APA claims, but denied that motion as to the retroactivity claim. Id. at 917–18. On appeal, the Ninth Circuit noted that the claims presented "require factual development," and therefore are "generally channeled to the district court, which will afford more full appellate review." Id. at 924. Analyzing the retroactivity claims, the appellate court found that the "district court's findings of fact are not clearly erroneous." Id. at 926. In determining whether to conduct a retroactivity analysis itself, the court noted that the "record is already sufficiently developed," so that "[a]pplication of the Montgomery Ward factors is now

---

[8] Carillo de Palacios v. Holder, 708 F.3d 1066 (9th Cir. 2013); Garfias–Rodriguez, 702 F.3d at 504; Lopez-Aguiar v. Holder, 584 F. App'x 903, (9th Cir. 2014); Li v. Holder, 570 F. App'x 660 (9th Cir. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|-------------------------|------|----------------|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

purely a matter of law.  Id. at 927–28 (emphasis added).  Chang therefore suggests that evidence of prior agency practice, which will not necessarily be included in the administrative record compiled for review of a specific case, may be appropriate for addressing retroactivity claims in connection with EB-5 visa decisions.  At oral argument, plaintiffs' counsel buttressed this conclusion by representing that litigation of Chang included multiple depositions and thousands of pages of document discovery.[9]

The Court determines that, because plaintiffs have not had the opportunity to conduct discovery on their retroactivity claims, and because they have set out with reasonable specificity the facts they hope to obtain through discovery and how those facts would help them advance their claims, it is appropriate to allow limited discovery on those claims.  At the hearing, the Court requested and heard oral argument on the scope of discovery to be permitted.  Plaintiffs' counsel argued that, in addition to document discovery, plaintiffs should be permitted to depose, at the least, (1) the director of the USCIS Immigrant Investor Program Office in Washington, D.C., (2) the director of the USCIS California Service Center involved in adjudicating plaintiffs' petitions, and (3) one or more I-526 petition adjudicators.  Defendants' counsel argued that if discovery is to be permitted it all, it should be limited to ten interrogatories, and that defendants would seek to conduct discovery of their own to the extent that plaintiffs are permitted discovery.  The Court concludes that each side should be permitted three depositions, and reasonable document discovery limited to the alleged policy changes that form the basis of plaintiffs' retroactivity claims.

## C.   Plaintiffs' Due Process Claims

Plaintiffs also submit that they need discovery of the following types to show that defendants violated their constitutional due process rights by failing to follow their own

---

[9] The Court also notes that in R.L. Investment Limited Partners v. INS, 86 F. Supp. 2d 1014 (D. Haw. 2000), adopted in full, 273 F.3d 874 (9th Cir. 2001), the district court—while ultimately rejecting claims that the government had impermissibly applied new precedent decisions to a pending I-526 petition—cited deposition testimony, which would not ordinarily be permitted in an APA case.  86 F. Supp. 2d at 1022.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           **'O'**

| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
|----------|-------------------------|------|----------------|
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

regulations or conducting proceedings "so fundamentally unfair that the alien was prevented from reasonably presenting his case":

- Depositions to determine whether defendants had an undisclosed policy of denying all petitioners residency even though job creation unaffected by USCIS's interpretations was sufficient to approve a subset of plaintiffs' petitions;
- Depositions to determine whether defendants had an undisclosed policy of ignoring expert testimony, such as that submitted by Carlsson on the use of the IMPAN model; and
- Depositions "to ascertain when, how, and why Defendants refused to consider" job creation forecasted by methodologies USCIS had approved in accepting ALDC's regional center application.

Dkt. No. 38 ¶¶ 31–32.

A plaintiff may under some circumstances maintain a constitutional due process claim alongside arbitrary and capricious APA claims, and conduct discovery in support of those claims. See Grill v. Quinn, No. CIV S–10–0757 GEB GGH PS, 2012 WL 174873, at *2, 5 (E.D. Cal. Jan. 20, 2012) (stating that where plaintiff alleged "a claim for violation of procedural due process in addition to [an] APA claim," the court could "look beyond the administrative record," and permitting limited document discovery). But as one district court has stated, "in adjudicating constitutional claims under the APA, courts have permitted plaintiffs to submit evidence that was not part of the administrative record. . . . However, even where plaintiffs have asserted constitutional claims, 'wide-ranging discovery is not blindly authorized at a stage in which such an administrative record is being reviewed.' " Tafas v. Dudas, 530 F. Supp. 2d 786, 802 (E.D. Va. 2008) (quoting P.R. Public Housing Admin. v. U.S. Dep't of Housing & Urban Dev., 59 F. Supp. 2d 310, 327 (D.P.R. 1999)).

Here, plaintiffs present in support of discovery for their due process claims no compelling argument not advanced in some form in support of discovery on the APA and retroactivity claims. If this were sufficient for obtaining broad discovery including depositions, almost any APA plaintiff could skirt the record rule simply by alleging a parallel due process claim for "fail[ing] to consider relevant evidence." Dkt. No. 46 at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:12-cv-07893-CAS(AGRx) | Date | March 23, 2015 |
| Title | COURTNEY CARLSSON, ET AL. v. UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL. | | |

10.  But see Am. Biosciences, 269 F.3d at 1084 ("Absent very unusual circumstances, the district court does not take testimony [in an APA case]."). Although the limited discovery the Court is prepared to permit on plaintiffs' retroactivity claims may also help them to prove their due process claims to the extent they are premised on allegations that defendants "imposed new evidentiary requirements," Dkt. No. 46 at 10, plaintiffs have not shown that defendants' motion should be held in abeyance so that plaintiffs can conduct deposition discovery of the types they seek on their due process claims.

## V.    CONCLUSION

The Court concludes that plaintiffs have shown that they should be permitted to conduct limited discovery on their retroactivity claims. Further, efficiency counsels deciding defendants' pending motion at the same time as plaintiffs' contemplated motion for summary judgment. Plaintiffs' motion is therefore **GRANTED** to the extent it is consistent with the foregoing, and with the following discovery and briefing schedule. The parties shall be permitted to conduct three depositions per side as well as document discovery directed at the alleged policy changes that form the basis of plaintiffs' retroactivity claims. This discovery shall be completed no later than **June 19, 2015**. Plaintiffs' motion for summary judgment shall be filed no later than **June 26, 2015**, on which date plaintiffs' opposition to defendants' pending motion to affirm the agency's decisions shall also be due. The Court will hear the scheduling conference, defendants' pending motion to affirm the agency's decisions, as well plaintiffs' motion for summary judgment, on **July 27, 2015** at **10:00 A.M.**

IT IS SO ORDERED

| | 00 | : | 12 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |